## J. J. BEHLES v. MAURICE DUFFY, as Administrator of the Estate of Mary Duffy, Deceased.

(159 N. W. 838.)

Action to recover on an alleged promissory note for $2,500 of Mary Duffy, which defendant claims she never executed, and to be a forgery. *Held:*

**Promissory note — action on — execution — forgery — evidence — genuineness of note.**

1. The evidence is sufficient to sustain the finding of the trial court that the instrument is not the note of Mary Duffy, but was written in over her signature.

**Production of note — by plaintiff — completeness of note — no evidence of — nor presumption of law — proof — inferences therefrom.**

2. No presumption of law applies that, from plaintiff's production of the note in complete form, with her signature underneath it, that it was complete, and such when delivered as against inferences under the proof.

**Note — complete in form — delivery of — possession of — presumption of law — proof.**

3. There is no presumption of law that she delivered the note in complete form or at all under the proof.

**Circumstances — inferences from — alteration of note — facts — issues for jury.**

4. All inferences from the circumstances proved, including the alteration apparent upon the face of the instrument when examined under a microscope, are of fact and for the determination of the jury as issues of fact.

Opinion filed October 10, 1916.

An appeal from the District Court of McLean County, NUESSLE, J. Affirmed.

*H. F. O'Hare,* for appellant.

The defense here is forgery, and evidence as to the financial standing of the parties was introduced to prove the probability of the defendant having signed the note. Such evidence is not admissible. Bridgeman v. Corey, 62 Vt. 1, 20 Atl. 273; Pettiford v. Mayo, 117 N. C. 27, 23 S. E. 252; Taylor v. Gale, 14 Wash. 57, 44 Pac. 110; Bliss v. Johnson, 162 Mass. 323, 38 N. E. 446; Martin v. Knight, 147 N. C. 564, 61 S. E. 447; Hyman v. Kirt, 153 Mich. 113, 116 N. W. 536.

Plaintiff made out a prima facie case by proving the signature on the note and the last indorsement, and the offer of the note in evidence. Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614; Dan. Neg. Inst. 812; Shepard v. Hanson, 9 N. D. 249, 83 N. W. 20, 10 N. D. 194, 86 N. W. 704; Tapia v. Baggett, 167 Ala. 381, 52 So. 834; Barnes v. Spencer & B. Co. 162 Mich. 509, 139 Am. St. Rep. 587, 127 N. W. 752; Johnson County Sav. Bank v. Koch, 38 Pa. Super. Ct. 553; Stouffer v. Kelchner, 38 Pa. Super. Ct. 475; De Leon v. Walters, 163 Ala. 499, 50 So. 934, 19 Ann. Cas. 914; Jackson & S. Traction Co. v. Green, 93 C. C. A. 272, 167 Fed. 806; Olson v. Day, 23 S. D. 150, 120 N. W. 883, 20 Ann. Cas. 516; McKeand v. Feinberg, 145 Ill. App. 274; Walsh v. Allen, 6 Colo. App. 303, 40 Pac. 473; 8 Cyc. 69, 71, under note 23.

The burden of proof is on the party pleading want or failure of consideration. Keelyn v. Strieder, 148 Ill. App. 238; Ewen v. Templeton, 148 Ill. App. 46; Speeler v. Heil, 77 N. J. Eq. 592, 78 Atl. 692; Taylor v. Taylor, 138 Mich. 658, 101 N. W. 832; American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; Columbian Bkg. Co. v. Bowen, 134 Wis. 218, 114 N. W. 451.

So, in pleading fraud or forgery. Brokaw v. McElroy, 162 Iowa, 288, 50 L.R.A.(N.S.) 835, 143 N. W. 1087; Toledo, S. & M. R. Co. v. Peters, 177 Mich. 76, 143 N. W. 18; National German American Bank v. Lang, 2 N. D. 66, 49 N. W. 414; First Nat. Bank v. Laughlin, 4 N. D. 391, 61 N. W. 473; Seybold v. Grand Forks Nat. Bank, 5 N. D. 460, 67 N. W. 682; Ravicz v. Nichells, 9 N. D. 536, 84 N. W. 353; Vickery v. Burton, 6 N. D. 245, 69 N. W. 193, and cases cited; Gawthorpe v. Clark, 173 Mich. 267, 138 N. W. 1075; Fordyce v. Humphrey, 152 Iowa, 76, 131 N. W. 686; Blakesburg Sav. Bank v. Burton, 156 Iowa, 671, 137 N. W. 916; First Nat. Bank v. Fulton, 156 Iowa, 734, 137 N. W. 1019.

It must be shown that the forgery by alteration took place after execution and delivery. Bailey v. Taylor, 11 Conn. 531, 29 Am. Dec. 321; Hunt v. Gray, 35 N. J. L. 228, 10 Am. Rep. 232; Gooch v. Bryant, 13 Me. 386; Crabtree v. Clark, 20 Me. 337; Neil v. J. I. Case & Co. 25 Kan. 510, 37 Am. Rep. 259; Beaman v. Russell, 20 Vt. 205, 49 Am. Dec. 775; Davis v. Jenney, 1 Met. 221; Cass County v. American Exch. State Bank, 9 N. D. 263, 83 N. W. 12; Dorsey v. Conrad, 49 Neb. 443, 68 N. W. 645; Lachemmaier v. Hanson, 116

C. C. A. 397, 196 Fed. 773; Pastene v. Pardini, 135 Cal. 431, 67 Pac. 861; Griswold v. Davis, 31 Vt. 390; Woodford v. Dorwin, 3 Vt. 82, 21 Am. Dec. 573; Garrigus v. Home, Frontier & F. Missionary Soc. 3 Ind. App. 91, 50 Am. St. Rep. 262, 28 N. W. 1009; Knapstein v. Tinnette, 156 Ill. 322, 40 N. E. 947; Winfrey v. Ragan, 136 Mo. App. 250, 117 S. W. 83; Gandy v. Bissell, 72 Neb. 356, 100 N. W. 803; 1 Dan. Neg. Inst. ¶ 812, p. 962, and notes cited there; Cranson v. Goss, 107 Mass. 439, 9 Am. Rep. 45; Sinclair v. Baggaley, 4 Mees. & W. 312, 150 Eng. Reprint, 1448, 7 L. J. Exch. N. S. 305, 1 Horn & H. 294, 2 Jur. 283; Anderson v. Weston, 6 Bing. N. C. 296, 133 Eng. Reprint, 117, 8 Scott, 583, 9 L. J. C. P. N. S. 194, 4 Jur. 105; Emery v. Vinall, 26 Me. 295; Churchill v. Gardner, 7 T. R. 596, 101 Eng. Reprint, 1151; Smith v. McClure, 5 East, 477, 102 Eng. Reprint, 1153, 2 Smith, 43, 7 Revised Rep. 750; Exchange Bank v. Veirs, 3 Cal. App. 71, 84 Pac. 455; Binney v. Plumley, 5 Vt. 500, 26 Am. Dec. 313.

Possession of note by payee, or other person aside from maker, is prima facie evidence of delivery. Bellows v. Folsom, 4 Robt. 43; Stouffer v. Curtis, 198 Mass. 560, 85 N. E. 180; Carrigus v. Home, Frontier & F. Missionary Soc. 3 Ind. App. 91, 50 Am. St. Rep. 262, 28 N. E. 1009; Gandy v. Bissell, 81 Neb. 102, 115 N. W. 571, 117 N. W. 349; Massachusetts Nat. Bank v. Snow, 187 Mass. 159, 72 N. E. 959.

And such possession raises the presumption of ownership. Home Sav. Bank v. Stewart, 78 Neb. 624, 110 N. W. 947; Hurt v. Ford, — Mo. —, 36 S. W. 671; Hodge v. Smith, 130 Wis. 326, 110 N. W. 192; Allison v. Hollembeak, 138 Iowa, 479, 114 N. W. 1059; Hall v. Wortman, 123 Mich. 304, 82 N. W. 50; Baumeister v. Kuntz, 53 Fla. 340, 42 So. 886; Montvale v. People's Bank, 74 N. J. L. 464, 67 Atl. 67; Colborn v. Arbecam, 54 Misc. 623, 104 N. Y. Supp. 986; Moak v. Stevens, 45 Misc. 147, 91 N. Y. Supp. 903; Poess v. Twelfth Ward Bank (Check) semble, 43 Misc. 45, 86 N. Y. Supp. 857; Greeser v. Sugarman, 37 Misc. 199, 76 N. Y. Supp. 922.

The character of negotiability having been voluntarily conferred on an instrument by the maker, it cannot be destroyed except by the act of a holder in limiting its payment, by proper insertion to himself or some other person. 3 R. C. L. p. 840, Bills & Notes, § 14; Man-

hattan Sav. Inst. v. New York Nat. Exch. Bank, 170 N. Y. 58, 88 Am. St. Rep. 640, 62 N. E. 1079; Holliday State Bank v. Hoffman, Ann. Cas. 1912D, 11, note.

The verdict here should have been set aside and a new trial ordered, as a matter of sound discretion in the trial court. Meehan v. Great Northern R. Co. 13 N. D. 432, 101 N. W. 183; Richmire v. Andrews & G. Elevator Co. 11 N. D. 453, 92 N. W. 819; Johns v. Ruff, 12 N. D. 74, 95 N. W. 440; West v. Northern P. R. Co. 13 N. D. 221, 100 N. W. 254; Nelson v. Grondahl, 12 N. D. 130, 96 N. W. 299; Ætna Indemnity Co. v. Schroeder, 12 N. D. 110, 95 N. W. 436.; Schumacher v. Great Northern R. Co. 23 N. D. 231, 136 N. W. 85.

J. A. *Hyland* and R. L. *Frazer,* for respondent.

In an action on a note the execution of which is disputed, it is competent to offer evidence as to the financial dealings of the parties to show the probability or improbability of the execution of the note. 8 Cyc. 259; Nickerson v. Gould, 82 Me. 512, 20 Atl. 86; Gitchell v. Ryan, 24 Ill. App. 372; Bliss v. Johnson, 162 Mass. 323, 38 N. E. 446.

When persons occupy a relationship of trust and confidence, as here shown, the court will scrutinize their dealings very carefully. Fjone v. Fjone, 16 N. D. 100, 112 N. W. 71.

The presumption is that material evidence withheld by the plaintiff would be against him. Tabor v. Fox, 56 Iowa, 539, 9 N. W. 897; Lauer v. Banning; 152 Iowa, 99, 131 N. W. 783; 16 Cyc. 1064; Dubois v. Baker; 30 N. Y. 355.

Where execution is denied, the mere possession and holding of the note is not sufficient proof of the due execution and delivery. Stoddard v. Lyon, 18 S. D. 207, 99 N. W. 1116.

Where a piece of paper is signed in blank, the party signing cannot be bound to an obligation written in thereafter, unless it is clearly shown that he gave the person who wrote it authority to do so. Richards v. Day, 137 N. Y. 183, 23 L.R.A. 601, 33 Am. St. Rep. 704, 33 N. E. 146; First Nat. Bank v. Zeims, 93 Iowa, 140, 61 N. W. 483.

The foreign law will be presumed to be the common law in the absence of proof to the contrary, and the validity of the note is governed by the common-law rules. Comp. Laws 1913, § 7936, subsec. 41; Hanson v. Great Northern R. Co. 18 N. D. 324, 138 Am. St.

Rep. 768, 121 N. W. 78; Pritchard v. Norton, 106 U. S. 124, 27 L. ed. 104, 1 Sup. Ct. Rep. 102; 8 Cyc. 216.

A statute which, although expressed in terms of evidence, materially affects a contract in existence by taking away a vested right, is unconstitutional. 8 Cyc. 218, 1015; Marsh v. Burroughs, 1 Woods, 463, Fed. Cas. No. 9,112; Hope Mut. Ins. Co. v. Flynn, 38 Mo. 483, 90 Am. Dec. 438.

A non-negotiable note altered after execution so as to make it negotiable is void even in the hands of a bona fide holder, unless consent to the alteration is clearly shown. Porter v. Hardy, 10 N. D. 551, 88 N. W. 458; Maguire v. Eichmeier, 109 Iowa, 301, 80 N. W. 395; Robinson v. Reed, 46 Iowa, 219; Shroeder v. Webster, 88 Iowa, 627, 55 N. W. 569.

An ancillary administrator has no authority to allow and pay claims of residents of the state in which the principal administration was granted. Shegogg v. Perkins, 34 Ark. 117; Churchill v. Boyden, 17 Vt. 319; Hunt v. Fay, 7 Vt. 170; Aspden v. Nixon, 4 How. 467, 11 L. ed. 1059; Ponderson v. Avery, 1 Root, 103.

The allowance or rejection of a claim is binding upon the estate and claimant, although strictly speaking it is not a judgment. La Porte v. Organ, 5 Ind. App. 369, 32 N. E. 342; Livermore v. Haven, 23 Pick. 116; 18 Cyc. 492; Floyd v. Clayton, 67 Ala. 265; Wernse v. McPike, 100 Mo. 476, 13 S. W. 809.

A complaint which alleges interest payable annually is not supported by offering in evidence a note providing for interest, but not payable annually. Viets v. Silver, 15 N. D. 51, 106 N. W. 35.

Goss, J. This is an action against the administrator, Maurice Duffy, to recover of the estate of Mary Duffy $2,500 and interest upon an alleged promissory note given by her to one Rev. Wm. H. Sheran, and purchased by plaintiff from Sheran after its maturity.

The answer denies the execution and delivery of the note, and alleges "that the said Sheran fraudulently executed said note in his favor, and that, if the signature of Mary Duffy is signed to said note, that the same was obtained by fraud, and not otherwise." The trial court adjudged the note invalid because of forgery. Sufficiency of the evidence to sustain this finding is challenged. If there is com-

petent evidence to sustain that finding the case is concluded against appellant.

The note was written upon a portion of a blank sheet of narrow white paper. It is almost square. The body of the note reads:

Plentywood, Montana.<br>Aug. 1st, 1909.

One year from date, for value received, I promise to pay the Rev. Wm. H. Sheran or order the sum of twenty-five hundred dollars ($2,500), with interest at the rate of seven per cent, before and after maturity.

Mary Duffy.

It is admitted that the entire note above the words, "Mary Duffy," is in the handwriting of Sheran. Also that the words, "Mary Duffy," are in her handwriting and are her genuine signature. There are two folds lengthwise across the paper and through the handwriting. The last word, "maturity," is written as the last line, and is crowded in above the first word of the signature, the upper part of the letter "M" of the word "Mary" of the signature crosses the word "maturity," and the word "seven" in the line immediately above the word "maturity." The signature is with a different and lighter ink than that in which the rest of the note is written. Across the back of the note also admittedly in the handwriting of Sheran appearing as an indorsement thereon are the words: "One year's extension granted. Due Aug. 1, 1911. To be paid at Farmers Bank, Garrison, N. Dak.," in apparently the same ink with which the body of the note is written. And underneath this indorsement is a second indorsement in different ink, but also in the handwriting of Sheran. "One year's interest due on this note August 1st, 1911," and underneath is still another indorsement, "Pay to the order of J. J. Behles, without recourse," in different handwriting, followed by the genuine signature and indorsement of "Rev. Wm. H. Sheran."

Mary Duffy died in Iowa in 1911, at the home of her sister Mrs. Ella Fogarty. This note was presented for allowance November 29, 1911, to Maurice Duffy, the administrator for the estate in probate court in Livingston county, Illinois, by Sheran, as a claim against

the estate of Mary Duffy. Its payment was refused by the administrator under the claim that the note was a forgery. That court set a date for hearing on the issue so joined, whereupon Sheran asked withdrawal of the claim without prejudice. This the administrator opposed, but withdrawal was allowed. Sheran then presented it as a claim against her estate, to defendant administrator in ancillary administration, in McLean county, North Dakota, where she owned land. Sheran does not testify. He has left this country and is in Oxford, England.

Mr. Marshall D. Ewell, author of Ewell's Medical Jurisprudence and an expert of National reputation in handwriting and kindred subjects, after an examination of the note under a microscope, has testified that the body of the note was written after the words "Mary Duffy" had been affixed to the paper upon which the note is written. He has detailed his reasons, that where the words in the body of the note are written across the portion of the signature, the writing carries through that of the signature, showing that the signature was then dry and was made first, and these words of the body of the note written over it. An examination under the microscope verifies this statement, and the further one, that certain portions of the signature were written across a fold in the paper after the paper had been folded, broadening the lines. The position of the signature with reference to the rest of the note, and that the body of the note seems crowded in above it in economizing space, is also significant. The paper appears to be a cut-off portion of the sheet of notepaper, as is evident from the margin in which an irregularity appears, caused by cutting with a sharp instrument from the balance of the sheet.

There is also in evidence the fact that about the time the note bears date Mary Duffy was not in need of money, but instead had means. The plaintiff, a banker at Garrison, North Dakota, testifies that "she had notes with us for collection, and she had drafts and cashier's checks against our bank, and at other times she had money in and on time certificates, interest-bearing time certificates. She probably had for six months or a year, but not all the time."

It is proved that Sheran was hard up financially during the period from April, 1909, until August 12, 1909, after the date of the note. In July, 1911, in Montana, Ella Fogarty found four or five of Sher-

an's own letters in his handwriting in a trunk belonging to Mary Duffy
at her home. This was after her death. In a letter of April 24,
1909, Sheran states: "I am sorely in need of an immediate pay-
ment" of some money he claimed due. Again on May 30, 1909, he
wrote Mary Duffy on a business deal, from Plentywood, Montana,
stating, "I have only $250, and I am afraid it will not be enough."
On August 12, 1909, two weeks after the date of the note, he wrote
to Mary Duffy:

I decided to make a call upon my brother with the view to secure
from him part payment at least of the note I hold against him. It
may be necessary to visit St. Paul and my old home at Waseca, in
order to get the required funds to live up there and be in a position
to improve my claim. My idea is to have enough in hand to get a
team and a cow.

Hoping you will not grow discouraged or lonesome, I remain,

Sincerely,

Wm. H. Sheran.

The admissibility of these letters is objected to, and error is assigned
on their reception in evidence. But they would have been admitted
in a suit on the note by Sheran against Mary Duffy and under the
same issues as a statement against interest, and tending to show his
own statement as to his financial condition as a circumstance corrobo-
rative of the nonexecution of the note by Mary Duffy. As plaintiff
is a purchaser after maturity, and his right to recover is subject to
the same defenses, such evidence is admissible in this suit. These
letters establish that long prior to and after the date of this alleged
note the payee therein was not, in all probability, loaning money, nor
in financial condition to have loaned $2,500 to Mary Duffy. For the
same reasons the testimony is admissible of Ella Fogarty, that in
April, 1911, three months prior to her death, Mary Duffy had in
her possession a promissory note of Sheran to Mary Duffy for $100,
drawn payable one year after date, and at that time past due, estab-
lishing that in 1910 or earlier Sheran was owing Mary Duffy $100.
The sister had the note in her possession, and discussed it with Mary
Duffy. She showed witness "two or three other notes on other parties."
She spoke to her sister about her (Mary's) business affairs. Witness
had the Sheran note for $100 in her hands and read it. A month

later, when "I asked her where that note (of Sheran's) was," she said, "I attended to that." She had previously said to her sister, "This, (Sheran's note) is past due. I don't suppose I will be able to collect it," and she offered it to me. I told her "I would have nothing to do with it," and handed it back to her, and I never saw it afterwards.

These circumstances are strongly corroborative of the contention of the defendant that Mary Duffy had not executed and delivered her note for this large amount to Sheran. And Sheran's default in explanation. of the circumstances under which or the consideration for which the note was executed and delivered is a circumstance supporting a conclusion that Sheran's testimony would be unfavorable to plaintiff's recovery. Plaintiff claims that upon the proof as made of the genuineness of the signature of Mary Duffy and the production of the note by plaintiff a prima facie case was established, and that he has made thereby prima facie proof of the execution and delivery of the note by Duffy to Sheran for a valuable consideration, and that such presumption continues, and that thereunder even though the body of the instrument was written by her upon the paper, yet it must be presumed that the instrument was complete when delivered. Plaintiff contends that it must be presumed that under the proof the note in its present form was delivered by Mary Duffy to Sheran, and that any alteration or additions were made and authorized by Mary Duffy before she delivered it, and that a delivery in its present form must be presumed in law.

There is no presumption of law as to whether the note was completed as written when delivered, or, on the contrary, altered or forged after completion and delivery. There is irreconcilable conflict in the authorities as to the extent of and application of presumptions involving alterations of the many classes of instruments. Under some authorities deeds, wills, and commercial paper each constitute different classes with different presumptions to be drawn as to each, from the fact of alteration proved or presumed from the face of the instrument. Jones on Evidence, § 564, at page 685. Concluding discussion of the various presumptions and inferences from the alterations of different instruments, announces a rule that seems sound when applied to the facts in the case at bar. That authority says:

"But whatever conflict of opinion there may be as to the legal presumptions to be raised, there seems to be quite general concurrence in the view that when suspicious circumstances, tending to discredit the document, appear either upon its face or from extrinsic facts, the burden of removing such suspicion is upon the party seeking to use the instrument. There is, however, an indefiniteness about the proper application of the word 'suspicious' as applied to the appearance of the document. In some cases the mere fact of the alteration is held to be suspicious. But this is not supported by any volume of authority. The weight seems to be with those which do not regard the appearance of a change suspicious *per se.*

Sec. 565. There is also general concurrence in the view that the question whether an alteration has been made is a matter to be determined by the jury. Where the instrument is submitted to them, either with or without explanation, the appearance of the document, the possible motive for or against the alteration, the advantage or disadvantage to the party claiming under the instrument which would be likely to follow from an alteration, are all circumstances from which the jury may determine the fact of alteration. And when the person by whom, the time when, or the intent with which, or the circumstances of, consent to an admitted alteration was made, is drawn into question, it is for the jury to say whether it was by a party to the instrument or by a stranger, whether before or after execution, and whether with an honest or a fraudulent purpose. In various jurisdictions, as we have shown, different presumptions exist as to these questions of fact, dependent upon the appearance of the instrument when offered in evidence. But in all of these jurisdictions such presumptions are disputable only, and the question is in the end one for the jury. While there are numerous cases in which it has been held that instruments in which the alteration was manifest from their face, as from difference in ink or handwriting, might be submitted to the jury without any explanation, yet it is clearly the safer and better practice for the person relying on such an instrument to give evidence explaining the same, if possible; and in many cases this has been held indispensable. When the maker testifies that an alteration has been made, it is clearly a question for the jury. When an alteration, after execution, is shown,

it is incumbent on the person claiming under the instrument to prove consent."

Daniel on Negotiable Instruments, 6th ed. § 1421A, states the same rule in these words: "The question as to the burden of proof in respect to alterations is generally affected by all the surrounding circumstances; and one fact or another shifts it to and fro, the jury being left to weigh the testimony and determine the issue with all the lights that can be thrown upon it. Very slight circumstances may operate to shift the burden of proof, and it has been well said by Horton, Ch. J., in Kansas, that 'it is impossible to fix a cast-iron rule to control in all cases.' When all the facts are undisputed some presumption must arise; and that presumption must be conformable to the experience of mankind, and according to what that experience shows to be most probably the truth of the matter. The authorities are every way; and generally each case must rest largely on its own peculiar surroundings."

There is evidence from which a jury might find the facts to be that the purported signature was upon a blank piece of paper, and that the body of the note was thereafter written above it. There is no proof that the instrument was ever presented for payment to the deceased, unless the indorsement placed upon the back of the instrument by the payee in his own handwriting, granting a year's extension, be taken as some evidence thereof, but this on the contrary could be taken as a suspicious circumstance as a secret indorsement made to apparently explain or furnish a reason for not enforcing payment; the existence of the $100 note on a year's time of Sheran to Mary Duffy and overdue and unpaid in her possession in 1911 is a strong circumstance, as in the usual course of business it would have been surrendered and an indorsement for the amount made upon the larger obligation, the note in suit. The filing of the claim by Sheran and its subsequent withdrawal after issue joined thereon as to its validity after a date set for its trial evidenced a desire to avoid investigation into it; this is strengthened by the assignment to plaintiff, a third person, to present anew in another jurisdiction. All these circumstances, taken in connection with the straightened financial circumstances of Sheran during the summer of 1911 as shown by his own written statements, are sufficient to justify an inference and support

the finding as drawn by the trial court in passing upon the facts that the purported note is not, and never has been, the promissory note of Mary Duffy, and that the action thereon must fall. The judgment therefore is affirmed.